IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

REX GAINEY,
      Plaintiff,

vs.                           Case No.: 3:17cv361/LAC/EMT

CITY OF NICEVILLE, et al.,
      Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Rex Gainey ("Gainey"), an inmate of the Florida Department of Corrections ("FDOC"), is proceeding pro se and in forma pauperis in this civil rights action. Presently before the court is Gainey's Second Amended Complaint (ECF No. 12).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b). After careful consideration of all issues raised by Gainey, it is the opinion of the undersigned that Gainey's claims against two of the three Defendants should be dismissed, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

I.      BACKGROUND

Gainey names the following three Defendants in this case:  (1) the City of Niceville; (2) David Popwell, Chief of the Niceville Police Department ("NPD"); and (3) Richard Austin, an officer with the NPD (ECF No. 12 at 1–2).[1]  Gainey alleges on September 5, 2015, at 2:30 a.m., Officer Austin responded to a 911 call reporting a possible domestic disturbance (*id.* at 5).  Gainey alleges Office Austin arrived at the scene and observed him (Gainey) walking with a shotgun resting on his shoulder (*id.*).  Gainey alleges Officer Austin shined a high wattage flashlight directly into his (Gainey's) eyes, which dazed and stunned him (*id.*).  Gainey alleges Officer Austin did not identify himself (*id.*).  Gainey alleges Officer Austin attempted to disarm him by grabbing the barrel of his shotgun from its resting place on his shoulder and wresting to take it away (*see id.*; *see also* ECF No. 1 at 5).  Gainey alleges he believed he was being attacked by a person who had threatened him earlier that day, so he "resisted all efforts" to take his shotgun away (*id.*).  Gainey alleges he was ultimately able to free himself from Officer Austin, and Austin immediately shot at him six times without warning (*id.*).  Gainey alleges he was struck by three of the shots (*id.*).  Gainey alleges the shooting "induced [him] into a frantic state of mind" and caused him to run into "the residence," which resulted in his being charged with burglary (*see*

---

[1] The court refers to the page numbers automatically assigned by the court's electronic filing system rather than the pagination of the original documents.

ECF No. 12 at 6).  According to the public docket of the Okaloosa County Circuit

Court, Case No. 2015-CF-1955, of which the court takes judicial notice, Gainey was

convicted of armed burglary, two counts of attempted first degree murder, and one

count of attempted felony murder, based upon offense conduct that occurred on

September 5, 2015, the same day as Officer Austin's use of force.

Gainey alleges he suffered permanent disfigurement and deformity of his left

arm as a result of being shot by Officer Austin (ECF No. 12 at 6).  Gainey also alleges

he suffered, and still suffers, extreme emotional distress and recurring nightmares

(*id.*).  Gainey alleges on January 14, 2017 (sixteen months after the shooting), he had

a nightmare of being attacked by Officer Austin and awoke in the prison's medical

department having fallen off his bed and broken his collar bone (*id.*).

Gainey alleges Officer Austin failed to adhere to the NPD's use-of-force policy,

which requires a "use-of-force continuum" (ECF No. 12 at 6).  Gainey alleges Chief

Popwell and the City of Niceville failed to properly train officers on the City's "use-

of-force continuum" policy (*id.* at 6–7).  Gainey alleges Chief Popwell and the City

were "aware of the pattern of similar misconduct/constitutional violations by Niceville

P.D. personnel regarding the use-of-force continuum" (*id.*).  Gainey also alleges Chief

Popwell and the City failed to ensure that Officer Austin's body camera was operational, and they failed to discipline Office Austin after the shooting (*id.*).

Gainey claims that Defendants violated his right to be free from excessive force, guaranteed by the Fourth and Fourteenth Amendments (ECF No. 12 at 8). Gainey also brings an equal protection claim against Officer Austin (*id.*). As relief, Plaintiff seeks compensatory damages in the amount of $300,000.00 for pain, permanent disfigurement, and mental anguish (*id.*).

II.    DISCUSSION

The court is statutorily required to review the Second Amended Complaint to determine whether this action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). To survive dismissal at the screening phase, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal quotation marks and citation omitted). A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). Plausibility means "more than a sheer

possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation and citation omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679 (citation omitted). The pleader is not entitled to relief "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* (citing Fed. R. Civ. P. 8(a)(2)). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quotation and citation omitted). And "bare assertions" that "amount to nothing more than a formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681 (quotation and citation omitted). Stated succinctly:

> Pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 556 U.S. at 679.  In civil rights cases, "[m]ore than mere conclusory notice pleading is required . . . .  A complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory."  Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003) (quotation marks and alteration omitted).

A.     Claims Against Officer Austin

Gainey claims Officer Austin's use of force was excessive, in violation of the Fourth Amendment.  He also claims Officer Austin's conduct violated his equal protection rights guaranteed by the Fourteenth Amendment.

1.     Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment requires the government to treat similarly situated people alike.  *See* City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313 (1985).  To state a claim under the Equal Protection Clause, a plaintiff generally must allege that (1) he is similarly situated with other persons who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race.  Jones v. Ray, 279 F.3d 944, 946–47 (11th Cir. 2001) (internal quotations omitted).  Thus, in order to assert a viable equal protection claim, a plaintiff must first make a threshold showing that he was treated differently from others who

were similarly situated to him.  *See* Nordlinger v. Hahn, 505 U.S. 1, 112 S. Ct. 2326,

2331, 120 L. Ed. 2d 1 (1992); Hendking v. Smith, 781 F.2d 850 (11th Cir. 1986).

The plaintiff must also allege that the defendant acted with the intent to discriminate

against him.  *See* McClesky v. Kemp, 481 U.S. 279, 292, 107 S. Ct. 1756, 1767, 95

L. Ed. 2d 262 (1987); E & T Realty v. Strickland, 830 F.2d 1107, 1113 (11th Cir.

1987).  Conclusory allegations or assertions of personal belief of disparate treatment

or discriminatory intent are insufficient.  GJR Inv., Inc. v. Cnty. of Escambia, Fla.,

132 F.3d 1359, 1367–68 (11th Cir. 1998); Coon v. Ga. Pac. Corp., 829 F.2d 1563,

1569 (11th Cir. 1987).  The Equal Protection Clause is also implicated in "class of

one" claims.  Campbell v. Rainbow City, Ala., 434 F.3d 1306, 1314 (11th Cir. 2006).

A "class of one" equal protection claim does not allege discrimination against a

protected class, but rather it alleges that the plaintiff "'has been intentionally treated

differently from others similarly situated and that there is no rational basis for the

difference in treatment.'"  Griffin Indus. v. Irvin, 496 F.3d 1189, 1202 (11th Cir.

2007) (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073,

145 L. Ed. 2d 1060 (2000)).  The same strict "similarly situated" standard applies

whether an equal protection claim is brought under a "class of one" theory or a

traditional theory of unlawful discrimination.  *Id.* at 1204–05.  Indeed, the "similarly

situated" requirement must be rigorously applied in the context of "class of one"
claims.  *See* <u>Leib v. Hillsborough Cnty. Pub. Transp. Comm'n</u>, 558 F.3d 1301, 1306
(11th Cir. 2009).

Here, Gainey does not allege he was similarly situated with other persons who
received more favorable treatment than he.  Furthermore, with respect to a traditional
equal protection claim, Gainey fails to allege that the allegedly discriminatory
treatment was based on a constitutionally protected interest, such as race.  Moreover,
as to both types of equal protection claims, Gainey does not allege that Officer Austin
acted with the intent to discriminate against him.  Gainey's allegations fail to state a
plausible equal protection claim; therefore, this claim should be dismissed.

## 2.    Excessive Force Claim

The Fourth Amendment provides the right to be free from unreasonable
searches and seizures by the government.  Under the Fourth Amendment, a seizure
occurs when an officer, "by means of physical force or show of authority, has in some
way restrained the liberty of a citizen." <u>Roberts v. Spielman,</u> 643 F.3d 899, 905 (11th
Cir. 2011) (quoting <u>Terry v. Ohio,</u> 392 U.S. 1, 19 n.16, 88 S. Ct. 1868, 20 L. Ed. 2d
889 (1968)).  Thus, the Fourth Amendment's freedom from unreasonable seizures
encompasses the right to be free from the use of excessive force in the course of an

arrest, or other "seizure." *See* <u>Graham v. Connor</u>, 490 U.S. 386, 394–95, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) ("[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard.") (emphasis omitted)).

It is well settled that courts must account "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." <u>Graham</u>, 490 U.S. at 397. Although suspects have a right to be free from force that is excessive, they are not protected against a use of force that is "necessary in the situation at hand." <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1197 (11th Cir. 2002) (internal quotation marks omitted). "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." <u>Graham</u>, 490 U.S. at 396. To determine if the use of force exceeded that which is necessary, courts are required to balance carefully "'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Id.* at 396 (internal quotation marks omitted).

The Fourth Amendment standard is reasonableness, and it is reasonable for police to move quickly if delay "would gravely endanger their lives or the lives of others." Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 298–99, 87 S. Ct. 1642, 18 L. Ed. 2d 782 (1967). This is true even when, judged with the benefit of hindsight, the officers may have made "some mistakes." Heien v. North Carolina, 135 S. Ct. 530, 536, 190 L. Ed. 2d 475 (2014).

The Supreme Court has also explained that "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." Tennessee v. Garner, 471 U.S. 1, 11, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985). Furthermore, the Eleventh Circuit has said that "[b]ecause the Constitution permits the use of deadly force to prevent a violent suspect from escaping, the Constitution must also permit the use of deadly force against a suspect who poses not merely an escape risk (because he is not yet in police control), but also an imminent threat of danger to a police officer or others." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1246 (11th Cir.2003). The Eleventh Circuit has distilled three key factors concerning the reasonableness of the use of deadly force. *See* Smith v.

LePage, 834 F.3d 1285, 1295 (11th Cir. 2016). An officer is justified in using deadly

force when the officer:

> "(1) has probable cause to believe that the suspect poses a threat of
> serious physical harm, either to the officer or to others or that he has
> committed a crime involving the infliction or threatened infliction of
> serious physical harm; (2) reasonably believes that the use of deadly
> force was necessary to prevent escape; and (3) has given some warning
> about the possible use of deadly force, if feasible."

*Id.* (quoting McCullough v. Antolini, 559 F.3d 1201, 1206 (11th Cir. 2009)).

Perspective is crucial to the analysis: "[t]he only perspective that counts is that of a

reasonable officer on the scene at the time the events unfolded." Garczynski v.

Bradshaw, 573 F.3d 1158, 1166 (11th Cir. 2009); *see also* Graham, 490 U.S. at 396

(explaining that a "standard of reasonableness at the moment applies"). "[T]he mere

presence of a gun or other weapon is not enough to warrant the exercise of deadly

force and shield an officer from suit. Where the weapon was, what type of weapon

it was, and what was happening with the weapon are all inquiries crucial to the

reasonableness determination." Perez v. Suszczynski, 809 F.3d 1213, 1220 (11th Cir.

2016).

Here, it appears that further factual development is appropriate to determine the

reasonableness of Officer Austin's actions in light of the information that was

available to him at the time he shot at Gainey.  Therefore, Gainey's excessive force

claim against Officer Austin should be permitted to proceed.

      B.    <u>Claims Against Chief Popwell and the City</u>

Even though Gainey's factual allegations are sufficient to survive the court's

statutory screening as to the excessive force claim against Officer Austin, Gainey has

not stated a basis for holding Chief Popwell or the City liable for Officer Austin's use

of force.  Government officials may not be held liable for the unconstitutional conduct

of their subordinates under a theory of respondeat superior.  *See* <u>Monell v. New York</u>

<u>City Dep't of Soc. Servs.</u>, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)

(finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983)

"Because vicarious liability is inapplicable to [ ] § 1983 suits, a plaintiff must plead

that each Government-official defendant, through the official's own individual

actions, has violated the Constitution."  <u>Iqbal</u>, 556 U.S. at 676.  Under <u>Iqbal</u>, "each

Government official, his or her title notwithstanding, is only liable for his or her own

misconduct."  *Id.*, 556 U.S. at 677.  "[S]upervisors are liable under [section] 1983

'either when the supervisor personally participates in the alleged constitutional

violation or when there is a causal connection between actions of the supervising

official and the alleged constitutional violation.'"  <u>Myers v. Bowman</u>, 713 F.3d 1319,

1328 (11th Cir. 2013) (quoting <u>Keating v. City of Miami</u>, 598 F.3d 753, 762 (11th Cir. 2010)). Facts sufficient to establish a causal connection include those "which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." <u>Keating</u>, 598 F.3d at 762 (internal quotation omitted). The factual allegations of the complaint must plausibly show that the supervisory official acted with the same mental state required to establish a constitutional violation against his subordinate. *See* <u>Franklin v. Curry</u>, 738 F.3d 1246, 1250 (11th Cir. 2013).

Under § 1983, a supervisor can be held liable for failing to train his or her employees, but "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact." <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989); *see also* <u>Keith v. DeKalb Cnty., Ga.</u>, 749 F.3d 1034, 1052 (11th Cir. 2014). Thus, a plaintiff alleging a constitutional violation premised on a failure to train must demonstrate that the supervisor had "actual or constructive notice that a particular omission in their training program causes [his or her] employees to violate citizens' constitutional rights," and that armed with that knowledge the supervisor chose to retain that training program. <u>Connick v. Thompson</u>, 563 U.S. 51, 61, 131 S. Ct. 1350, 179 L. Ed. 2d 417

(2011). To establish that the supervisor was on actual or constructive notice of the deficiency of training, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary." *Id.* (internal citations omitted).

The court previously advised Gainey of the standard he must meet to allege a plausible claim against the City and Chief Popwell, and that his factual allegations must be more than vague and conclusory (*see* ECF No. 10). Despite this advisory, Gainey's sole allegation supporting his failure-to-train claims against Chief Popwell and the City is that both Defendants were "aware of the pattern of similar misconduct/constitutional violations by Niceville P.D. personnel regarding the use-of-force continuum" (ECF No. 12 at 6). This vague, conclusory allegation is insufficient to state a plausible basis for holding the City or Chief Popwell liable for Officer Austin's use of force. Therefore, Gainey cannot establish liability on a failure-to-train theory.

Further, Gainey cannot establish a basis for holding Chief Popwell or the City liable for failing to discipline Officer Austin, presumably on the theory that they ratified Austin's conduct. When a plaintiff is relying not on a pattern of unconstitutional conduct, but on a single incident, he must demonstrate that local government policymakers had an opportunity to review the subordinate's decision and

agreed with both the decision and the decision's basis before a court can hold the government liable on a ratification theory.  *See* <u>Salvato v. Miley</u>, 790 F.3d 1286, 1296 (11th Cir. 2015) (citation omitted).  Only when "the authorized policymakers approve a subordinate's decision and the basis for it" have they "ratifi[ed]" that "decision." <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 127, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988).

Here, Gainey does not allege any facts suggesting that Chief Popwell or any member of the City's governing body had an opportunity to review any part of Officer Austin's decisions or actions concerning the use of force before those decisions and actions became final, much less that the City or Chief Popwell approved Austin's decision and the basis for it.  *See* <u>Salvato</u>, 790 F.3d at 1296 (citations omitted). Therefore, Chief Popwell and the City may not be held liable on a failure-to-discipline theory.

Lastly, Gainey's claim that Chief Popwell and the City failed to ensure that Officer Austin's equipment, including his body camera, was functional is also insufficient to impose liability for Officer Austin's use of force.  Gainey does not allege any facts that plausibly suggest a causal connection between the functionality

of Officer Austin's equipment and Officer Austin's shooting Gainey after their struggle over the shotgun.

Gainey's factual allegations fail to state a plausible basis for holding Chief Popwell or the City liable for Officer Austin's use of force on September 5, 2015. Therefore, Gainey's constitutional claims against the two supervisory Defendants should be dismissed.

For the aforementioned reasons, it is respectfully **RECOMMENDED**:

1.     That Plaintiff's equal protection claim against Defendant Austin be **DISMISSED with prejudice**, under 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief may be granted;

2.     That Plaintiff's claims against Defendant David Popwell and Defendant City of Niceville be **DISMISSED with prejudice**, under 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief may be granted; and

3.     That the case be recommitted to the undersigned for further proceedings on Plaintiff's Fourth Amendment excessive force claim against Defendant Austin.

At Pensacola, Florida, this 29th day of November 2017.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.