IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

REX GAINEY,
      Plaintiff,

vs.                              Case No.: 3:17cv361/LAC/EMT

RICHARD AUSTIN,
      Defendant.
_____/

## **SECOND REPORT AND RECOMMENDATION**

Plaintiff Rex Gainey ("Gainey"), an inmate of the Florida Department of Corrections ("FDOC"), is proceeding pro se and in forma pauperis in this civil rights action. Presently before the court is Defendant Sergeant Austin's motion for summary judgment, with supporting evidentiary materials (ECF Nos. 28, 29).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b). After careful consideration of all issues presented by the parties, it is the opinion of the undersigned that Sergeant Austin's motion for summary judgment should be granted.


I.      BACKGROUND

Gainey commenced this case on May 22, 2017, by filing a Complaint under 42 U.S.C. § 1983 (ECF No. 1). He subsequently filed an Amended Complaint and a Second Amended Complaint (ECF Nos. 5, 12). In the Second Amended Complaint, which is the operative pleading, Gainey named the City of Niceville, Niceville Police Chief David Popwell, and Niceville Police Sergeant Richard Austin as Defendants (ECF No. 12). Gainey claimed that Defendants violated his right to be free from excessive force, guaranteed by the Fourth and Fourteenth Amendments (*see id.* at 5–8).[1] Gainey also brought an equal protection claim against Sergeant Austin (*id.*). As relief, Gainey sought compensatory damages in the amount of $300,000.00 for pain, permanent disfigurement, and mental anguish (*id.*).

Upon screening the Second Amended Complaint, pursuant to 28 U.S.C. § 1915(e)(2)(B), the undersigned recommended that all claims against the City and Chief Popwell be dismissed with prejudice, and that Gainey's equal protection claim against Sergeant Austin be dismissed with prejudice, pursuant to § 1915(e)(2)(B)(ii) (ECF No. 15). The District Judge adopted the Report and Recommendation and recommitted the case to the undersigned for further proceedings on Gainey's Fourth Amendment excessive force claim against Sergeant Austin (ECF No. 16).

---

[1] The court refers to the page numbers automatically assigned by the court's electronic filing system rather than the pagination of the original documents.

On July 17, 2018, Sergeant Austin filed a motion for summary judgment with supporting evidentiary materials (ECF Nos. 28, 29).  Sergeant Austin makes three arguments:  (1) Gainey's excessive force claim is barred by Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994); (2) the force used by Austin was objectively reasonable given the totality of the circumstances; and (3) Austin is entitled to qualified immunity, because there was no clearly established right placing him on notice that the force he used under the circumstances was unconstitutional (ECF No. 28 at 11–26).

The court issued an order informing the parties of the importance and ramifications of summary judgment consideration, providing them with information as to the requirements for materials submitted for review pursuant to Rule 56, and setting a deadline for Gainey to file a response to the motion for summary judgment (ECF No. 31).  At Gainey's request, the court extended the deadline (*see* ECF Nos. 32, 33).  Gainey filed a "Reply to Defendant Richard Austin's Motion for Summary Judgment" ("Response") on September 28, 2018 (ECF No. 34).   In Gainey's Response, he asserts Defendant Austin failed to fully respond to his combined Interrogatories and Request for Production ("discovery requests") (*see id.* at 2–6, ¶¶ 3–12).  Gainey contends the court should delay ruling on Defendant Austin's

motion for summary judgment until Austin fully responds to his discovery requests, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure (*see id.*).

Sergeant Austin filed a reply, pursuant to Rule 56.1(D) of the Local Rules for the Northern District of Florida (*see* ECF No. 35). Austin contends his responses to Gainey's discovery requests were not deficient (*see id.* at 2–3). Austin further contends Gainey's presenting this discovery dispute to the court is untimely (*id.*). Austin notes discovery closed on July 3, 2018, and Gainey did not move to compel production or raise any purported discovery deficiencies with either defense counsel or the court until September 28, 2018, when he filed his Response to the motion for summary judgment (*id.*). Austin attached Gainey's discovery requests and Austin's responses (*id.*, Ex. 1).

Gainey filed a "Reply," to which Sergeant Austin objected as unauthorized (*see* ECF Nos. 36, 37). The undersigned directed the clerk of court to strike Gainey's "Reply" as unauthorized (*see* ECF No. 38).

Gainey has not shown that deferring a decision on the motion for summary judgment is warranted. As Sergeant Austin asserts, Gainey never filed a motion to compel responses to his discovery requests. Further, by the time Gainey first presented this discovery dispute to either the court or Defendant's counsel, the

deadline for his doing so had passed (*see* ECF No. 24 at 1, ¶ 1 (setting discovery deadline as July 3, 2018); *see id.* at 3, ¶(4)(c) ("Unless otherwise ordered by the court, no motions to compel discovery may be filed after the close of discovery.")). Moreover, upon review of Gainey's discovery requests and Sergeant Austin's responses, it is evident that Gainey was not prevented from presenting facts essential to justify his opposition to Sergeant Austin's motion for summary judgment. Therefore, a delay in ruling on Sergeant Austin's motion for summary judgment is not warranted.

II.     SUMMARY JUDGMENT STANDARD

In order to prevail on a motion for summary judgment, the moving party must show that the nonmoving party has no evidence to support his or her case or present affirmative evidence that the nonmoving party will be unable to prove his or her case at trial.  *See* Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  If the moving party successfully negates an essential element of the nonmoving party's case, the burden shifts to the nonmoving party to come forward with evidentiary material demonstrating a genuine issue of fact for trial.  *Id.*

The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*, 477 U.S. at 248. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* The nonmoving party must show more than the existence of a "metaphysical doubt" regarding the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Speculation or conjecture from a party cannot create a genuine issue of material fact. *See* Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005). "A mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." Young v. City of Palm Bay, Fla., 358 F.3d 859, 860 (11th Cir. 2004); *see also* Celotex Corp., 477 U.S. at 324. The nonmoving party must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *See* Celotex Corp., *supra*; Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997) (Rule 56 requires the nonmoving party to go beyond the pleadings and by his or her own affidavits, or by the depositions, documents, affidavits or declarations, admissions, interrogatory answers or other

materials on file designate specific facts showing that there is a genuine issue for trial); Hammer v. Slater, 20 F.3d 1137 (11th Cir. 1994).

With regard to the factual positions asserted by the parties, the court must apply the standard set forth in Rule 56(c) of the Federal Rules of Civil Procedure, which provides in relevant part:

> **(1) Supporting Factual Positions.**  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> . . . .
>
> **(4) Affidavits or Declarations.**  An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c) (2010).  If a fact cannot be presented in a form that would be admissible in evidence, it cannot be used for purposes of summary judgment.  *See* Macuba v. Deboer, 193 F.3d 1316, 1322 (11th Cir. 1999); *see* Fed. R. Civ. P. 56(c).

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court will consider the fact undisputed for purposes of the motion for summary judgment, or grant summary judgment if the moving party's motion and supporting materials—including the facts considered undisputed—show that the moving party is entitled to it.  *See* Fed. R. Civ. P. 56(e)(2, 3).

Evidence presented by the nonmoving party in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to him or her.  *See* <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); <u>Jones v. Cannon</u>, 174 F.3d 1271, 1282 (11th Cir. 1999).  Nonetheless, the nonmoving party still bears the burden of coming forward with sufficient evidence of every element that he or she must prove.  *See* <u>Celotex Corp.</u>, 477 U.S. at 317.

Where the movant seeks summary judgment on the basis of an affirmative defense, it must conclusively establish all essential elements of that defense.  *See* <u>Celotex</u>, 477 U.S. at 331 (party bearing burden of persuasion at trial may prevail on a motion for summary judgment when it has produced credible evidence that would

entitle it to a directed verdict if not controverted at trial); <u>Thorsteinsson v. M/V</u>

<u>Drangur</u>, 891 F.2d 1547, 1551 (11th Cir. 1990).

A motion for summary judgment should be granted if "the movant shows that

there is no genuine dispute as to any material fact and that the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>Celotex Corp.</u>, 477 U.S. at 322.

III.   UNDISPUTED MATERIAL FACTS[2]

Sergeant Austin has been employed with the Niceville Police Department for

approximately eleven years (Defendant's Statement of Undisputed Facts, p. 3, ECF

No. 28; Transcript of Gainey's Criminal Trial, p. 157, ECF No. 29-1).  Sergeant

Austin is a 28-year veteran of the United States Military and has served in both the

Marine Corps and the Air Force (Defendant's Statement of Undisputed Facts, p. 4;

Transcript of Criminal Trial, p. 157).  Sergeant Austin received training on the

Niceville Police Department's use of force policy (Transcript of Criminal Trial, p.

191).  Austin knew that the policy authorized the use of deadly force when "the

subject of such force poses imminent danger of death or great bodily harm to the

officer or another person" (Gainey's Response, Ex. A, Niceville Police Department

General Order regarding Use of Force, ECF No. 34-1; Transcript of Criminal Trial,

---

[2] Facts included in Defendant Austin's Statement of Undisputed Facts and which Gainey did not address in his Response are deemed undisputed.  *See* Fed. R. Civ. P. 56(e)(2).

p. 191). Austin interpreted the policy as authorizing the use of deadly force where there is an imminent threat of someone being killed or severely wounded (Transcript of Criminal Trial, pp. 189–90).

Michael Moore, Gainey's co-worker and long-time acquaintance, spoke to Gainey via push-to-talk radio around lunch time on September 4, 2015 (Defendant's Statement of Undisputed Facts, p. 4; Transcript of Criminal Trial, pp. 133–35, ECF No. 29-1). Gainey was crying and wanting to speak to his ex-wife Jane, but she did not want to speak to him (Defendant's Statement of Undisputed Facts, p. 4; Transcript of Criminal Trial, pp. 136, 138). Gainey spoke to Moore about Jane approximately 12–15 times that day (Defendant's Statement of Undisputed Facts, p. 4; Transcript of Criminal Trial, p. 138). At one point that evening, Gainey told Moore that he was looking at Jane (Defendant's Statement of Undisputed Facts, p. 4; Transcript of Criminal Trial, pp. 140–41). Mr. Moore was afraid that Gainey was going to hurt himself, and by doing so, would hurt Jane (Defendant's Statement of Undisputed Facts, p. 4; Transcript of Criminal Trial, pp. 141–42). Mr. Moore called 911 (Defendant's Statement of Undisputed Facts, p. 4; Transcript of Criminal Trial, p. 143). Moore reported that Gainey was at Jane Edge's residence, 902 - 48th Street, and was talking about hurting both her and himself; that Gainey was despondent over a

breakup two months prior; and that Gainey was armed with a shotgun (Defendant's Statement of Undisputed Facts, p. 4; Transcript of Criminal Trial, pp. 145–46). Jane Edge is Gainey's ex-wife (Defendant's Statement of Undisputed Facts, p. 4; Transcript of Criminal Trial, p. 152).

Sergeant Austin was working on the night of September 4, 2015 (Defendant's Statement of Undisputed Facts, p. 5, ECF No. 28; Transcript of Criminal Trial, p. 157, ECF No. 29-1). Sergeant Austin received a call to Jane Edge's residence (Defendant's Statement of Undisputed Facts, p. 5; Transcript of Criminal Trial, pp. 157–58). Austin first received the call to respond to the residence at approximately 11:45 p.m. on September 4, 2015, to investigate a threat of a man who was going to kill his ex-wife and himself with a shotgun (Defendant's Statement of Undisputed Facts, p. 5; Transcript of Criminal Trial, p. 158). Upon arrival, Sergeant Austin made contact with Ms. Edge and spoke to her for 15–20 minutes (Defendant's Statement of Undisputed Facts, p. 5; Transcript of Criminal Trial, pp. 158–59). Sergeant Austin advised Ms. Edge to call the police if she heard anything or thought something was going on (Defendant's Statement of Undisputed Facts, p. 5; Transcript of Criminal Trial, p.159). Sergeant Austin was dispatched to the home a second time at the request of Ms. Edge, who reported that Gainey was banging on the door of her

apartment (*id.*). Upon arrival, Sergeant Austin spoke with Ms. Edge, but did not see anyone else at the scene (Defendant's Statement of Undisputed Facts, p. 5; Transcript of Criminal Trial, pp. 160–61). Sergeant Austin checked the area for Gainey's vehicle, and then parked his patrol car in front of Ms. Edge's apartment in case Gainey returned (Defendant's Statement of Undisputed Facts, p. 5; Transcript of Criminal Trial, p. 162).

Sergeant Austin was sitting in his patrol car with the lights out and observed a person (later identified as Gainey) walking across the street from Jane Edge's apartment toward Austin's position (Defendant's Statement of Undisputed Facts, p. 5, ECF No. 28; Transcript of Criminal Trial, p. 162, ECF No. 29-1). The person appeared to see Austin, and backed up and walked into a wooded area (Defendant's Statement of Undisputed Facts, pp. 5–6; Transcript of Criminal Trial, pp. 162–63). Sergeant Austin started his patrol car, drove to the area where the person had walked, turned on lights to illuminate the area, walked into the area, shined his flashlight, announced himself as the police department, and asked the person to show himself (Defendant's Statement of Undisputed Facts, p. 6; Transcript of Criminal Trial, p. 163). Gainey did not show himself, but then appeared in the street and yelled, "Are

you talking to me?  Are you looking for me?" (Defendant's Statement of Undisputed

Facts, p. 6; Transcript of Criminal Trial, p. 163).

Sergeant Austin walked to the street and observed a man in the middle of the

street holding a shotgun on his shoulder (Defendant's Statement of Undisputed Facts,

p. 6, ECF No. 28; Transcript of Criminal Trial, pp. 163–64, ECF No. 29-1; Second

Amended Complaint, p. 5, ECF No. 12).  At that point, Sergeant Austin had not seen

Gainey commit a crime (Gainey's Response, p. 9; Transcript of Criminal Trial, p.

177).  Sergeant Austin was holding his flashlight in one hand, and pulled his duty

pistol with the other (Defendant's Statement of Undisputed Facts, p. 6; Transcript of

Criminal Trial, pp. 164, 178).  Austin was also armed with a taser that night, but did

not pull it (Gainey's Response, p. 9; Transcript of Criminal Trial, p. 179).  Austin

pointed his pistol at Gainey, and told him at least three times to drop the shotgun

(Defendant's Statement of Undisputed Facts, p. 6; Transcript of Criminal Trial, pp.

164, 177).  Gainey did not lower the shotgun (*id.*).  Sergeant Austin believed he had

an opportunity to attempt to disarm Gainey, so he rushed him, tried to grab the

shotgun with the same hand with which he was holding his flashlight, and pulled the

shotgun down (Defendant's Statement of Undisputed Facts, p. 6; Transcript of

Criminal Trial, pp. 164, 179–80).  At the time Sergeant Austin physically engaged

Gainey, Gainey had not said he was going to kill or shoot Austin, Gainey had not pointed the shotgun at Austin, and Gainey had not charged at Austin or taken aggressive action toward him (Gainey's Reply, p. 9; Transcript of Criminal Trial, pp. 191–93).

Sergeant Austin grabbed the shotgun for a moment and tried to pull it away from Gainey (Defendant's Statement of Undisputed Facts, p. 6; Transcript of Criminal Trial, p. 180). Gainey admits he "resisted all efforts of the shotgun being taking [sic] from his possession" (*see* ECF No. 1, p. 5). The shotgun started coming down and, as it started to level, Sergeant Austin pushed it back on Gainey (Defendant's Statement of Undisputed Facts, p. 6; Transcript of Criminal Trial, p. 180). Sergeant Austin pushed Gainey back, took two steps back, and shot Gainey "about center mass" (Defendant's Statement of Undisputed Facts, pp. 6–7; Transcript of Criminal Trial, pp. 164, 181). Sergeant Austin fired six shots, and hit Gainey with three of them (Second Amended Complaint, p. 5; ECF No. 12). Gainey returned fire and shot at Sergeant Austin twice (Defendant's Statement of Undisputed Facts, p. 7; Transcript of Criminal Trial, pp. 164–65). Sergeant Austin heard the blast and the projectile move past his ears, and he smelled gun powder (Defendant's Statement of Undisputed Facts, p. 7; Transcript of Criminal Trial, p. 165). Sergeant Austin believed he had

been shot (*id.*).  Austin believed that his gun was broken, because Gainey did not appear to be hurt (Defendant's Statement of Undisputed Facts, p. 7; Transcript of Criminal Trial, p. 166).  Austin ran behind some cars, replaced the magazine of his pistol because he thought it had malfunctioned, and readied himself to re-engage Gainey (*id.*).

The encounter and shooting between Sergeant Austin and Gainey was captured and recorded on Jane Edge's surveillance camera (Defendant's Statement of Undisputed Facts, p. 7, ECF No. 28; Affidavit of Richard Austin, Ex. A, ECF No. 29-6).  The video recording shows the following.  At 1:59:45, Gainey enters the frame from the right, walking in a roadway lighted by a streetlight.  Sergeant Austin turns his headlights on at approximately 1:59:49.  Immediately thereafter, Gainey exits the roadway and the area covered by the streetlight, and enters a darkened portion of the yard.  Gainey loiters for a moment, and, when Sergeant Austin's marked patrol car enters the roadway at 1:59:58, Gainey ducks around a tall fence. Sergeant Austin parks his car underneath a streetlight in front of the area of the fence where Gainey ducked, and activates his alley light on the area where Gainey ducked.  Austin exits his car at 2:00:10 and shines his flashlight in the area where Gainey ducked.  At approximately 2:00:16, Gainey walks out from behind the opposite end of the fence,

both behind and a short distance from Sergeant Austin and his marked patrol car. Although Gainey's shotgun is not clearly visible on the video recording, it is undisputed that Gainey was carrying it over his shoulder. Gainey starts to cross the roadway, and at 2:00:21, Sergeant Austin points his pistol at Gainey in a shooting stance. Sergeant Austin follows Gainey, and Gainey turns in Austin's direction at 2:00:23. At 2:00:24, Sergeant Austin grabs Gainey's shotgun, which is no longer on Gainey's shoulder and is between Gainey and Austin, and the two struggle for the shotgun. At 2:00:26, after two seconds of struggle during which Gainey resists Austin's efforts to disarm him, Austin pushes Gainey backwards and fires his pistol at Gainey. Gainey initially flees, but then turns in Austin's direction at 2:00:28. Sergeant Austin continues to fire his pistol, and then begins to flee at 2:00:29. Although Sergeant Austin states in his Statement of Undisputed Facts that the discharge of Gainey's shotgun is not visible on the video, a large blast of light is visible at Sergeant Austin's location at 2:00:30 as Austin continues to flee. At 2:00:31, Gainey visibly points the shotgun in Sergeant Austin's direction as Austin still flees. Gainey then walks toward Jane Edge's home as Sergeant Austin takes a position of cover behind a car. Gainey exits the frame at 2:00:34, looking over his

shoulder in Sergeant Austin's direction. Sergeant Austin emerges from behind the car at 2:00:46, and exits the frame at 2:00:48. Another patrol car arrives at 2:01:09.

Officer Chavis and Officer Higdon arrived at the scene (Defendant's Statement of Undisputed Facts, p. 8, ECF No. 28; Transcript of Criminal Trial, p. 166, ECF No. 29-1). Gainey had entered Jane Edge's apartment and gone up the stairs to the bedroom (*id.*). Sergeant Austin saw a blood trail going up the stairs, and saw Gainey at the top of the stairs at the bedroom door (*id.*). Austin was at the bottom of the stairs right outside the door, and yelled for Gainey to put down the shotgun (Defendant's Statement of Undisputed Facts, p. 8; Transcript of Criminal Trial, p. 167). Austin did not believe he could safely enter the stairway without being killed (Transcript of Criminal Trial, p. 167). Gainey did not comply with Austin's command to put down the shotgun, and instead moved the shotgun around the corner of the wall and said, "Bang, bang" (Defendant's Statement of Undisputed Facts, p. 8; Transcript of Criminal Trial, p. 167). Gainey shot into the bedroom through the bedroom door (*id.*). Sergeant Austin heard Jane Edge say, "I'm shot. I'm shot." (Defendant's Statement of Undisputed Facts, p. 8; Transcript of Criminal Trial, p. 168). Sergeant Austin heard a man say, "I've got him. I've got him. Come on up." (*id.*). When Austin arrived at the bedroom, he saw a man (later identified as Chuck Voneberstein) on top of Gainey,

holding him down (Transcript of Criminal Trial, p. 168–69).  Sergeant Austin saw that Gainey had bloody arms (*id.*).  Austin kicked the shotgun out of the way (*id.*).  Mr. Voneberstein backed off Gainey (*id.*).  Sergeant Austin and Officer Higdon attempted to handcuff Gainey, but Gainey physically resisted (Defendant's Statement of Undisputed Facts, p. 8; Transcript of Criminal Trial pp. 169–70).  The officers were finally able to handcuff Gainey (Transcript of Criminal Trial pp. 169–70).

After Gainey's arrest, Gainey made statements to Detective John Lee of the Niceville Police Department during a video recorded interview (Defendant's Statement of Undisputed Facts, p. 9, ECF No. 28; Transcript of Criminal Trial, pp. 422–50, ECF No. 29-3).[3]  Gainey told Detective Lee he went to Jane's house to talk to her (Transcript of Criminal Trial, p. 439).   Gainey told Detective Lee he was carrying his shotgun (*id.*).  Gainey told Lee, "All I remember is somebody pulled out and the lights were just shining.  And he jumped out and told me—went to hollering something. . . .  It was the law.  I'm sure it was the law's car or truck or something." (*id.*, p. 440).  Although Gainey said he heard the law enforcement officer "hollering something," Gainey told Detective Lee he did not hear what was said because he is hard of hearing (Gainey's Response, p. 8, ECF No. 34, Ex. D Declaration of Rex

---

[3] Gainey's unsworn statements during the interview are admissible non-hearsay.  *See* Fed. R. Evid. 801(d)(2)(A).

Gainey, ¶¶ 1–2, ECF No. 34-1).  Gainey told Detective Lee, "And the next thing I

know, I think he was shooting at me, and I couldn't do nothing [sic] with this arm."

(Transcript of Criminal Trial, p. 441).  Gainey told Lee, "I think I shot.  I think I shot

out there towards—I don't know." (*id.*).  Gainey told Lee that he could not see the

person, but whoever it was, he shot at him (*id.*, p. 442).  Detective Lee clarified, "You

said the law came up, and you knew it was the law because of the flashing lights." (*id.*,

p. 446).  Gainey responded, "I thought it was." (*id.*).

Gainey alleges he suffered "permanent disfigurement and deformation" of his

left arm as a result fo Sergeant Austin's shooting him (Second Amended Complaint

at 5–6, ECF No. 12).  Gainey also alleges he suffered, and still suffers, extreme

emotional distress and recurring nightmares (*id.*).

Gainey was charged in the Circuit Court of Okaloosa County, Florida, Case No.

2015-CF-001955, with the following offenses:  (1) attempted first degree felony

murder with a weapon or firearm of Wilma Jane Edge, Charles Voneberstein, and

Richard Austin (Counts 1–3, respectively); (2) burglary of Wilma Jane Edge's

dwelling while armed with a firearm (Count 4); (3) attempted first degree

premeditated murder of Richard Austin and Wilma Jane Edge (Counts 5 and 6,

respectively); and (4) resisting an officer, either Richard Austin, Tyler Chavis, or

Mark Higdon, without violence (Count 7) (Second Amended Information, ECF No. 29-5; Transcript of Criminal Trial, pp. 714–28, ECF No. 29-4).

The jury found Gainey guilty on all counts as charged (Transcript of Criminal Trial, pp. 753–55, ECF No. 29-4). The trial court set aside the verdicts as to Counts 1 and 3 and dismissed those two charges on double jeopardy grounds (*id.*, pp. 757–60). On September 19, 2016, the trial court adjudicated Gainey guilty of Counts 2, 4, 5, 6, and 7; again, the offense charged in Count 5 was attempted first degree premeditated murder of Sergeant Austin with a firearm (Judgment, ECF No. 29-5). The court sentenced Gainey to consecutive terms of life in prison as to Counts 2, 4, 5, and 6, and time served as to Count 7 (*id.*).

IV.   DISCUSSION

A.   Heck

Sergeant Austin's first argument is that to the extent Gainey's Fourth Amendment claim is based upon a false arrest theory, it is barred by Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994) (*see* ECF No. 28 at 15–16). Austin argues that Gainey's convictions for crimes arising from his September 5, 2015, arrest bar any challenge to the existence of probable cause for that arrest (*id.*). Gainey responds he is asserting only an excessive force claim, not a false

arrest claim (*see* ECF No. 34 at 9).  Gainey argues his criminal conduct and criminal

charges are a direct result of Sergeant Austin's unnecessary and unauthorized use of

excessive force (*id.* at 7).

In <u>Heck</u>, the Supreme Court held that a § 1983 suit for damages must be

dismissed if "a judgment in favor of the plaintiff would necessarily imply the

invalidity of his conviction or sentence," unless the conviction or sentence has been

reversed on direct appeal, expunged by executive order, declared invalid by a state

tribunal authorized to make such determination, or called into question by a federal

court's issuance of a writ of habeas corpus.  512 U.S. at 487.  The Supreme Court

gave the following as an example of a § 1983 suit that would be barred:

> A state defendant is convicted of and sentenced for the crime of resisting
> arrest, defined as intentionally preventing a peace officer from effecting
> a *lawful* arrest . . . .  He then brings a § 1983 action against the arresting
> officer seeking damages for violation of his Fourth Amendment right to
> be free from unreasonable seizures.  In order to prevail in this § 1983
> action, he would have to negate an element of the offense of which he
> has been convicted.  Regardless of the state law concerning res judicata
> the § 1983 action will not lie.

*Id.* at 487 n.6 (citations omitted) (emphasis in original).  The damages action should

not be dismissed, however, if the action (even if successful) would not demonstrate

the invalidity of any outstanding criminal judgment.  *See id.* at 487.  As long as it is

possible that a § 1983 suit would not negate the underlying conviction, then the suit

is not <u>Heck</u>-barred.  *See* <u>Dyer v. Lee</u>, 488 F.3d 876, 879–80 (11th Cir. 2007).  For

<u>Heck</u> to apply, it must be the case that a successful § 1983 suit and the underlying

conviction would be logically contradictory.  *Id.* at 884.  It is possible for an excessive

force claim and a conviction involving assault to coexist, because resisting law

enforcement does not invite the police to "inflict any reaction or retribution they

choose."  *Id.* (quotation omitted).

In order to determine whether a claim is barred by <u>Heck</u>, the court "must look

both to the claims raised under § 1983 and to the specific offenses for which the

§ 1983 claimant was convicted." <u>Hughes v. Lott</u>, 350 F.3d 1157, 1160 n.2 (11th Cir.

2003); *see also* <u>Heck</u>, 512 U.S. at 487; <u>Dyer v. Lee</u>, 488 F.3d 876, 879–80 (11th Cir.

2007) (explaining that application of <u>Heck</u> turns on whether "there would still exist

a construction of the facts that would allow the underlying conviction to stand").  The

<u>Heck</u> inquiry is thus necessarily a fact-intensive one, and must be conducted on a

case-by-case basis.  *See* <u>Dyer</u>, 488 F.3d at 883 (plaintiff's excessive force claim not

<u>Heck</u> barred by plaintiff's conviction for resisting arrest with violence because, based

on facts in record, a reasonable jury could find that not all of plaintiff's violent acts

were justified as self-defense).  It requires an analysis of whether there exists some set

of facts under which a successful § 1983 suit and the criminal conviction can both

stand.  *See id.* at 879–80.  Where a § 1983 plaintiff makes specific factual allegations that are inconsistent with the facts upon which his criminal convictions were based, <u>Heck</u> will bar the § 1983 claims.  *See id.* at 883 n.9 (citation omitted).  Similarly, the facts upon which the § 1983 claims are predicated may be so interrelated with the facts underlying the criminal conviction, such that <u>Heck</u> will bar the civil rights claims. *See id.* at 880 (<u>Heck</u> bars claims that would create two inconsistent judgments arising out of the same facts).

The jury in Gainey's criminal trial found him guilty of attempted first degree premeditated murder of Sergeant Austin and attempted felony murder of Sergeant Austin, in violation of Florida Statutes §§ 777.04, 782.04(1).  Section 782.04(1) defines premeditated murder as the unlawful killing of a human being when perpetrated from a premeditated design to effect the death of the person killed.  *See* Fla. Stat. § 782.04(1)(a)1.  The statute defines felony murder as the unlawful killing of a human being when committed by a person engaged in the perpetration of, or in the attempt to perpetrate, certain offenses, including burglary, murder, or resisting an officer with violence to his person.  *See* Fla. Stat. § 782.04(1)(a)2.  Section 777.04 provides, in relevant part:

> A person who attempts to commit an offense prohibited by law and in
> such attempt does any act toward the commission of such offense, but

fails in the perpetration or is intercepted or prevented in the execution thereof, commits the offense of criminal attempt, . . . .

Fla. Stat. § 777.04.

The transcript of Gainey's trial shows that the trial court instructed the jurors that for them to find Gainey guilty, the State must prove:  (1) Gainey did an act intended to cause Richard Austin's death; (2) Gainey acted with a premeditated design to kill Austin; and (3) Gainey's act would have resulted in Austin's death, except that someone prevented Gainey from killing Austin or Gainey failed to do so (Transcript of Criminal Trial, p. 717, ECF No. 29-4).   The jurors were instructed that a premeditated design to kill meant that there was a conscious decision to kill:

> The decision must be present in the mind at the time the act was committed.  The law does not fix the exact period of time that must pass between the formation of the premeditated intent to kill and the act.  The period of time must be long enough to allow reflection by the defendant.  The premeditated intent to kill must be formed before the act was committed.

(*id.*).   On the issue of premeditation, the court instructed the jury:

> An issue in this case is whether Rex Dewayne Gainey did not act with a premeditated design to kill because he acted in the heat of passion based on adequate provocation.  In order to find that the defendant did not act with a premeditated design to kill because he acted in the heat of passion based on adequate provocation;
>
> A, there must have been a sudden event that would have suspended the exercise of judgment in an ordinary, reasonable person.

And b, a reasonable person would have lost normal self-control and would have been driven by a blind and unreasoning fury.

And c, there was not a reasonable amount of time for a reasonable person to cool off.

And d, a reasonable person would not have cooled off before committing the act that constituted the attempt to cause death.

And e, that Rex Dewayne Gainey was, in fact, so provoked and did not cool off before he committed the act that constituted the attempt to cause the death of . . . Richard Austin.

(*id.*, pp. 718–19; ECF No. 29-4).

With regard to the attempted felony murder charge involving Richard Austin, the trial court instructed the jurors that to find Gainey guilty, the State must prove: (1) Gainey committed a burglary of a dwelling; (2) while engaged in the burglary, Gainey committed an intentional act that was not an essential element of burglary of a dwelling; and (3) the intentional act could have, but did not, cause Richard Austin's death (Transcript of Criminal Trial, pp. 720–21, ECF No. 29-4).

The trial court instructed the jurors that if they found Gainey guilty of attempted first degree murder or attempted felony murder with respect to Richard Austin (Counts 3 and 5), they must then determine whether the State proved, beyond a reasonable doubt, that Austin was a law enforcement officer engaged in the lawful performance of a legal duty (Transcript of Criminal Trial, pp. 719–21, ECF No. 29-4).

The trial court instructed the jurors that if they found Gainey guilty of attempted homicide, they must consider the circumstances surrounding the attempted homicide in deciding whether the attempted homicide was excusable or resulted from the justifiable use of deadly force (Transcript of Criminal Trial, pp. 715–16, ECF No. 29-4).  The court instructed the jury:

> The attempted homicide of a human being is justifiable and lawful if necessarily done while resisting an attempt to murder or commit a felony upon the defendant, . . . .
>
> The attempted homicide is excusable and therefore lawful under any one of the following three circumstances:  One, when the attempted homicide is committed by accident and misfortune in doing any lawful act.  By lawful means with usual ordinary caution and without any unlawful intent, or two, when the attempted homicide occurs by accident and misfortune in the heat of passion, upon any sudden and sufficient provocation, or three, when the attempted homicide is committed by accident and misfortune resulting from a sudden combat if a dangerous weapon is not used and the attempted killing is not done in a cruel and unusual manner.
> . . . .
> A person is not justified in using force or threatening to use force to resist an arrest by a law enforcement officer, or to resist a law enforcement officer who is engaged in the execution of a legal duty, if the law enforcement officer was acting in good faith and he or she is known or reasonably appears to be a law enforcement officer.

(Transcript of Criminal Trial, pp. 715–16, 725, ECF No. 29-4).

Sergeant Austin asserts that Gainey was convicted of attempted felony murder of a law enforcement officer (*see* ECF No. 28 at 9).  If this was the case, Gainey's

excessive force claim would be clearly <u>Heck</u>-barred, because one of the requirements

for a defendant to be sentenced for that offense is that the trier of fact finds that (1) the

defendant committed attempted murder in the first degree or attempted felony murder,

and (2) the victim was a law enforcement officer <u>engaged in the lawful performance</u>

<u>of a legal duty</u>.  *See* Fla. Stat. § 782.054 (emphasis added).

However, there is no evidence that the jury found that Sergeant Austin was a

law enforcement officer engaged in the lawful performance of a legal duty at the time

Gainey shot at him (Transcript of Criminal Trial, pp. 714–15, 743–48, 753–54, ECF

No. 29-4).  The jury's verdict is not part of the summary judgment record, and there

is no indication in the trial transcript that the verdict included such findings.

Additionally, there is no indication that Gainey's sentence for attempted first degree

murder of Sergeant Austin (Count 5) was enhanced based upon a finding that Sergeant

Austin was a law enforcement officer engaged in the lawful performance of a legal

duty at the time Gainey shot at him (Judgment, ECF No. 29-5).

The problem for Gainey is that even though the jury did not make a finding that

Sergeant Austin was engaged in the lawful performance of his duty when Gainey shot

at him, Gainey's success in this § 1983 suit would still result in a verdict inconsistent

with the jury's finding that Gainey was guilty of attempted first degree premeditated

murder of Sergeant Austin. Gainey's success in this § 1983 suit would result in a

verdict that Sergeant Austin's shooting of Gainey, which occurred before Gainey shot

at Austin, was excessive. If an officer uses excessive force, the "ordinarily protected

use of force . . . is transformed into a battery."[4] City of Miami v. Sanders, 672 So. 2d

46, 47 (Fla. 3d DCA 1996); see also Davis v. Williams, 451 F.3d 759, 768 (11th Cir.

2006); see also, e.g., Salter v. McNesby, No. 3:06cv110/MCR, 2007 WL 2459546,

at *16 (N.D. Fla. Aug. 24, 2007) (unpublished but recognized as persuasive authority).

And if the person committing the battery uses a deadly weapon, the battery is an

aggravated battery, which is a second degree felony. See Fla. Stat. § 784.045.[5] The

jury in Gainey's case rejected Gainey's justification defense, thus finding that Gainey

was not resisting an attempt to commit a felony at the time he shot at Sergeant Austin.

Gainey's success on his excessive force claim would be inconsistent with the verdict

---

[4] In Florida, the tort of battery "consists of the infliction of a harmful or offensive contact upon another with the intent to cause such contact or the apprehension that such contact is imminent." Quilling v. Price, 894 So. 2d 1061, 1063 (Fla. 5th DCA 2005). Where excessive force is found to have been used during an arrest or other seizure, a law enforcement officer's ordinarily protected use of force is transformed into a battery. See Mazzilli v. Doud, 485 So.2d 477, 481 (Fla. 3d DCA) (Schwartz, C.J., concurring in part).

[5] A battery is also a felony if the person who commits it (1) actually and intentionally touches or strikes another person against his will, and (2) causes great bodily harm, permanent disability, or permanent disfigurement. See Fla. Stat. § 784.041(1). Gainey alleges here that Sergeant Austin's shooting him caused "permanent disfigurement and deformation" of his left arm (Second Amended Complaint at 5–6, ECF No. 12).

in his criminal case.  Therefore, this § 1983 action is subject to dismissal as <u>Heck</u>-barred.

Although <u>Heck</u> is dispositive of the case, a <u>Heck</u> dismissal is a dismissal without prejudice and thus would permit Gainey to re-file his excessive force claim against Sergeant Austin if Gainey's conviction for attempted murder of Austin was declared invalid by a state or federal court.  Whereas if the court determines that Sergeant Austin was entitled to qualified immunity, that disposition would be with prejudice and thus would prevent Gainey from re-filing his claim.  In the interest of finality for Sergeant Austin, the court will determine his entitlement to a qualified immunity defense.

B.    <u>Qualified Immunity</u>

The defense of qualified immunity shields government officials performing discretionary acts "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982); <u>Hadley v. Gutierrez</u>, 526 F.3d 1324, 1329 (11th Cir. 2008).  "Under the qualified immunity doctrine, government officials performing discretionary functions are immune not just from liability, but from suit, unless the

conduct which is the basis for suit violates clearly established federal statutory or constitutional rights of which a reasonable person would have known." <u>Sanders v. Howze</u>, 177 F.3d 1245, 1249 (11th Cir. 1999) (citing <u>Harlow</u>, 457 U.S. at 818).

To be entitled to qualified immunity, a public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted). "To establish that the challenged actions were within the scope of his discretionary authority, a defendant must show that those actions were (1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority." <u>Harbert Int'l, Inc. v. James</u>, 157 F.3d 1271, 1282 (11th Cir. 1998). In other words, "[w]e ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." <u>Holloman ex rel. Holloman v. Harland</u>, 370 F.3d 1252, 1265 (11th Cir. 2004). "In applying each prong of this test, we look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." <u>Mikko v. City of Atlanta</u>, 857 F.3d 1136, 1144 (11th

Cir. 2017) (quoting <u>Holloman</u>, 370 F.3d at 1266). "[A] government official can prove he acted within the scope of his discretionary authority by showing objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." <u>Rich v. Dollar</u>, 841 F.2d 1558, 1564 (11th Cir. 1988) (internal quotation marks and citation omitted). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." <u>Lee</u>, 84 F.3d at 1194.

In deciding whether an officer is entitled to summary judgment based on qualified immunity, the question of whether the force used by the officer is excessive is a "'pure question of law'" to be decided by the court. <u>Myers v. Bowman</u>, 713 F.3d 1319, 1328 (11th Cir. 2013) (quoting <u>Scott v. Harris</u>, 550 U.S. 372, 381 n.8, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007)).

When "the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment." <u>Graham v. Connor</u>, 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical

coercion or threat thereof to effect it." *Id.*, 490 U.S. at 396. However, an officer's use of force violates the Fourth Amendment when it is objectively unreasonable under the facts and circumstances of a specific case. Determining whether the force used to effect a seizure was objectively reasonable requires case-by-case "balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* (internal quotation marks and citation omitted).

To properly apply the Fourth Amendment's test of reasonableness, the court must pay careful attention to the facts and circumstances of each particular case, looking to the totality of the circumstances. Graham, 490 U.S. at 396; Draper v. Reynolds, 369 F.3d 1270, 1277 (11th Cir. 2004). To assess whether the force used was reasonable, courts must examine (1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted. Draper, 369 F.3d at 1277–78 (citations omitted); *see also* Vinyard v. Wilson, 311 F.3d 1340, 1347 (11th Cir. 2002). Whether the force used was reasonably proportionate to the need for that force is measured by considering factors including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively

resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.  The reasonableness of a particular use of force must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Id.* (citation omitted).   "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  *Id.* at 396–97.

In one of the first cases on the general subject of deadly force, Tennessee v. Garner, 471 U.S. 1, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985), the Supreme Court addressed the constitutionality of the police using force that can be deadly.  There, the Court held that "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force."  *Id.*, 471 U.S. at 11.

The Eleventh Circuit has said that "[b]ecause the Constitution permits the use of deadly force to prevent a violent suspect from escaping, the Constitution must also permit the use of deadly force against a suspect who poses not only an escape risk (because he is not yet in police control), but also an imminent threat of danger to a

police officer or others." <u>McCormick v. City of Fort Lauderdale</u>, 333 F.3d 1234, 1246 (11th Cir. 2003). The Eleventh Circuit subsequently identified the following factors as justifying an officer's use of deadly force: (1) the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others or that he has committed a crime involving the infliction or threatened infliction of serious physical harm; (2) the officer reasonably believes that the use of deadly force is necessary to prevent escape; and (3) the officer has given some warning about the possible use of deadly force, if feasible. *See* <u>McCullough v. Antolini</u>, 559 F.3d 1201, 1206 (11th Cir. 2009).

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>White v. Pauly</u>, 580 U.S. ——, 137 S. Ct. 548, 551, 196 L. Ed. 2d 463 (2017) (per curiam) (alterations and internal quotation marks omitted). "Because the focus is on whether the officer had fair notice that her [of his] conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." <u>Brosseau v. Haugen</u>, 543 U.S. 194, 198, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004) (per curiam).

Although Supreme Court case law does not require a case directly on point for a right to be clearly established, existing precedent "must have placed the statutory or constitutional question beyond debate." White, 137 S. Ct. at 551 (internal quotation marks omitted). "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." Id. (internal quotation marks omitted). The Supreme Court has repeatedly told courts not to define clearly established law at a high level of generality. Kisela v. Hughes, — U.S. —, 138 S. Ct. 1148, 1152, 200 L. Ed. 2d 449 (2018) (quotation marks and citations omitted).

"[S]pecificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." Mullenix v. Luna, 577 U.S. ——, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015) (per curiam) (internal quotation marks omitted). Use of excessive force is an area of the law "in which the result depends very much on the facts of each case," and thus police officers are entitled to qualified immunity unless existing precedent "squarely governs" the specific facts at issue. Id., 136 S. Ct. at 309 (internal quotation marks omitted and emphasis deleted). Precedent involving similar facts can help move a case beyond the otherwise "hazy border between excessive and

acceptable force" and thereby provide an officer notice that a specific use of force is unlawful.  *Id.* at 312 (internal quotation marks omitted).

"Of course, general statements of the law are not inherently incapable of giving fair and clear warning to officers." White, 137 S. Ct., at 552 (internal quotation marks omitted).  But "the general rules set forth in Garner and Graham do not by themselves create clearly established law outside an obvious case." Kisela, 138 S. Ct. at 1153 (internal quotation marks and citation omitted).  Where constitutional guidelines seem inapplicable or too remote, "it does not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness." *Id.*  An officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." Plumhoff v. Rickard, 572 U.S. 765, 778–79, 134 S. Ct. 2012, 2023, 188 L. Ed. 2d 1056 (2014).

On the threshold issue of discretionary authority, Sergeant Austin has shown objective circumstances which compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority.  The undisputed facts show that Sergeant Austin was performing a legitimate job-related

function.  He was an on-duty patrol sergeant with the Niceville Police Department investigating a threat of a man who was going to kill his ex-wife and himself with a shotgun.  Additionally, Sergeant Austin was performing this function through means that were within his power to utilize.  Pursuant to the Niceville Police Department's Use of Force policy, Sergeant Austin was authorized to use force in executing his job duties.  The court is satisfied that Sergeant Austin's action were within the scope of his discretionary authority.

The burden thus shifts to Gainey to show that qualified immunity is not appropriate.  Gainey has failed to satisfy this burden.  The undisputed facts show that at the time Sergeant Austin shot Gainey, Austin was aware that he had been dispatched to Jane Edge's residence to investigate a report that a man was going to kill her and himself with a shotgun.  Sergeant Austin was aware that the man had come to Ms. Edge's apartment, then left, then returned a second time, and then left again. Austin observed a man walking across the street from Ms. Edge's apartment.  The man appeared to see Austin and ducked around a nearby fence.  Austin drove to the area where the man had walked, turned on lights to illuminate the area, walked into the area, shined his flashlight, announced himself as the police department, and asked the man to show himself.  The man did not show himself, but appeared in the street

behind Austin and yelled, "Are you talking to me?  Are you looking for me?"  Austin

saw that the man was holding a shotgun on his shoulder.  Austin was holding his

flashlight in one hand and drew his service pistol with the other.  Austin pointed the

pistol at Gainey and told him at least three times to drop the shotgun.  Gainey asserts

he did not hear Austin's commands, but Gainey admitted to Detective Lee that he

knew Austin was "the law."  Further, as depicted in the video, Gainey was standing

at the rear of Austin's patrol car facing Austin when Austin was pointing his service

pistol at Gainey.  Gainey did not drop the shotgun or otherwise respond to Austin.

Sergeant Austin first attempted to disarm Gainey by rushing at him and attempting to

grab the shotgun with the same hand with which he was holding his flashlight.  Austin

grabbed the shotgun for a moment, but Gainey did not give up control (as previously

discussed, Gainey admitted in his verified Complaint that he "resisted all efforts of the

shotgun being taking [sic] from his possession" (*see* ECF No. 1, p. 5)).  The shotgun

started coming down, and as it started to level, Sergeant Austin pushed it back on

Gainey and pushed Gainey back.  Austin stepped back two steps and then fired at

Gainey.

Gainey contends the Niceville Police Department's Use of Force policy

required Austin to use less-than-deadly-force with an intermediate weapon prior to use

deadly force with his pistol (*see* Second Amended Complaint, p. 6; Gainey's Response, pp. 9–10).   Gainey contends Sergeant Austin's shooting him was objectively unreasonable because Austin did not first attempt to use an intermediate weapon, specifically, the taser he had with him (*see id.*).

Sergeant Austin's drawing his pistol instead of his taser was objectively reasonable.  Austin was facing a man carrying a shotgun, who had walked up behind him and his patrol car and refused his commands to drop the shotgun.  And Sergeant Austin's firing at Gainey was objectively reasonable.  Before firing at Gainey, Austin attempted to disarm him by grabbing the shotgun.  Only when Gainey admittedly resisted Austin's attempt to disarm him did Austin shoot Gainey.  Austin faced an imminent danger of death or great bodily harm, and Austin reasonably protected himself from this danger instead of exposing himself to an unreasonable risk of being killed or suffering great bodily harm.  Not only did Sergeant Austin comply with the Police Department's Use of Force policy, he complied with the Fourth Amendment. *See, e.g.*, <u>Kenning v. Carli</u>, 648 F. App'x 763 (11th Cir. 2016) (holding that police officers acted reasonably in using deadly force where officers were responding to a residence to standby and ensure the peace while the complainant retrieved her property; the resident opened the door with a firearm in his hand after observing

police in the yard; officers repeatedly ordered the resident to drop the weapon, which he eventually did; the resident initially complied with the officer's verbal commands to raise his hands and exit the residence, but refused to get on the ground; instead of complying, the resident turned around, took a step up and back and reached toward the firearm he had previously dropped; two officers ordered him to stop, but he did not; and the officers fired multiple times, striking the resident in the back).

Based upon the undisputed facts, Gainey has not satisfied his burden of demonstrating that Sergeant Austin's use of force was unconstitutional. Therefore, Austin is entitled to qualified immunity on Gainey's Fourth Amendment claim.

V.    CONCLUSION

This § 1983 suit is barred by <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994). Additionally, Sergeant Austin is entitled to qualified immunity on Gainey's Fourth Amendment claim. Therefore, Sergeant Austin's motion for summary judgment should be granted.

For the aforementioned reasons, it is respectfully **RECOMMENDED**:

That Defendant Austin's motion for summary judgment (ECF No. 28) be **GRANTED**, and judgment be entered in favor of Defendant Sergeant Austin and against Plaintiff Gainey.

At Pensacola, Florida, this 15th day of November 2018.


/s/ *Elizabeth M. Timothy*

**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.** <u>**Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control**</u>**. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**